## Red Cross Medical Service Company v. Edward Green, Administrator.

### Gen. No. 12,391.

1. MALPRACTICE—*what not such, as will justify verdict for death of plaintiff's intestate.* A verdict predicated upon a charge that a physician was guilty of neglect and a lack of skill causing death cannot stand where it appears that the death resulted from a disease (in this case pneumonia) which frequently defies all care and skill, there being no evidence that the alleged lack of care and skill actually brought about the death in question.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1905. Reversed. Opinion filed April 5, 1906. Rehearing denied April 23, 1906.

WALTER J. MILLER, FRANK B. DYCHE and RANSOM E. WALKER, for appellant.

McCLELLAN & SPENCER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This appeal is from a judgment of the Circuit Court of Cook County obtained by the appellee as administrator against the appellant for causing the death of the appellee's intestate. The action was brought under the so-called "Campbell Act" of Illinois, which provides that the personal representative of a deceased person may, for the exclusive benefit of the widow and next of kin of such deceased person, sustain an action for damages against a person, company or corporation who has caused the death of the deceased by any such wrongful act, neglect or default as would have entitled the party injured to maintain an action and recover damages if death had not ensued.

The appellant, the defendant below, is a corporation in Chicago, giving contracts to various persons by which it agrees to provide medical attendance to the contract holder during the time the contract is in force and according to the conditions of the said contract.

The appellee's intestate, one Henry C. Bluhm, had such a contract with the appellant, dated February 3, 1902.  By it "The Red Cross Medical Service Company" promises, in consideration of a payment of forty-five cents weekly, to furnish Henry C. Bluhm "all the benefits referred to in an attached schedule."  The attached schedule reads:

"This contract provides for medical and surgical treatment, hospital care, the services of a trained nurse, and in the event of death, one hundred dollars (which is deemed sufficient to defray funeral expenses) will be paid on receipt of satisfactory proof of death and the surrender of this contract.  In lieu of hospital care or a trained nurse, it also provides for a weekly medicinal allowance of seven dollars for each full week of total disability from sickness or accident."

Printed on the back of the contract are directions in case of sickness, accident or death, to notify at once the Red Cross Medical Service Co., and "Regulations and Rules for Contract Holders ", which provide how a doctor should be consulted under various circumstances, and among other rules contain these:

"4.  If you do not find the doctor and immediate attention is required, telephone the main office of the company."

"7.  If you have any complaints, make them to the company at its central office and not to any one else."

"8.  It is the intention of the company to furnish the best of care and attention.  If you do not receive it, you will confer a favor by reporting it promptly to the central office of the company."

Also on the back of the policy there are further "Provisions" printed.  Among them is this:

" Fourth.  If provided for in the attached schedule, the contract holder shall be entitled while this contract is in force, subject to all its provisions, to free medical attendance and to free surgical care at his or her homes, whenever he or she may be totally incapacitated from performing any kind of work, and to free consultations and free treatment at all times during office hours at the office of the physician to whose care he or she may be assigned.  The company agrees upon its own behalf to appoint and employ

a competent physician and surgeon to examine and attend the contract holder in accordance with the terms of this section."

Also this: "Ninth. The company shall not be liable for any claim under this contract, unless it has been in force continuously and uninterruptedly for ten days prior to the commencement of the ailment, injury or complaint as the result of which claim for benefit is made."

And this: "Thirteenth. If the contract holder cannot secure the services of the district physician, immediate notice must be sent to the main office and acknowledgment received therefor; then only emergency calls may be allowed by the association."

On the cover of a receipt or account book furnished the beneficiary Bluhm with the contract, in which it was expected that receipts for the weekly payments would be entered, were again printed the "Regulations and Rules for Contract Holders," and the statement: "Your physician is Dr. W. H. Webster, Residing at 190 E. 55th St. Office Hours 11 A. M., at, after 7. 'Phone Oakland 206. Important. In case of an emergency or whenever in haste for a doctor, step into the nearest drug store and ask them to telephone for the above named doctor, which they will do for you without charge.

In case of sickness, accident or death, notify at once The Red Cross Medical Service Co., Suite 72, 140 Dearborn St. 'Phone Central 1965. Chicago, Ill."

The plaintiff's intestate, Bluhm, apparently held a contract with the appellant prior to February 3, 1902, of the same general terms, but with smaller fees and financial sick benefits, and it is claimed that the one in force involved in this suit was substituted therefor, and that the ninth clause of the "Provisions" is of no importance therefore in this case.

The view that we take of the essential merits of this cause makes it entirely unnecessary for us to discuss the question thus indicated or the rulings involving it.

In the latter part of January, 1902, Bluhm was attacked by rheumatism, and Doctor Webster was called by Mrs. Bluhm, in accordance with the instructions of the contract

and receipt book. He came on January 28th and gave the patient a prescription for rheumatism. He seems to have visited him again, at least once between that time and February 11th, he thinks about February 4th, and found Bluhm still suffering from the same ailment. Tuesday, February 11th, Dr. Webster called again, and this time he says that he found Bluhm with the same trouble complicated, however, with pericarditis, a frequent accompaniment of rheumatism. He gave him then another and different prescription. The patient was quite ill, though he seems to have been dressed and about his rooms on that day, as he was also on the next and perhaps as late as Thursday night, for so Dr. Brady testifies. He died, however, of pneumonia Saturday morning, February 15th. In the meantime Dr. Webster had again called on him on the 12th, but had ordered the same treatment and medicine continued. He testifies positively that when he saw Bluhm on February 11th and on February 12th, the latter did not have pneumonia, but was quite ill from rheumatic pericarditis, with some bronchitis.

February 12th Dr. Webster had a conversation with Mrs. Bluhm, the testimony of the parties to which concerning it is slightly, but not materially, variant. Mrs. Bluhm testifies that Dr. Webster said he was going to resign from the service of the Red Cross Company, and Dr. Webster says that he told her that he had resigned and presumed that they would send a physician there to see her husband. Mrs. Bluhm says he gave her a statement of the case, and that she wrote to the Red Cross Company claiming money for weekly sick benefits, but got no reply. Dr. Webster says, however, that Mrs. Bluhm asked him if he would continue to treat her husband, and that he answered affirmatively and told her to let him know if he was needed, if another physician did not come. Not receiving any call, he says he presumed that another physician had been sent by the Red Cross Company.

Dr. Webster's call on February 12th was in the forenoon, and Bluhm had no further medical attendance until Thurs-

day night, when Mrs. Bluhm, on her own account, called Dr. George P. Brady, a physician of seventeen years' practice in Chicago. Dr. Brady also saw Bluhm again Friday morning. Dr. Brady says that on Thursday evening Mr. Bluhm was dressed and walked from the kitchen into another room and lay down upon a lounge for examination. He testified positively that Mr. Bluhm did not then have pneumonia, and did not have it Friday morning when he last saw him, but was suffering only from rheumatic pericarditis. He testified also that the treatment of Dr. Webster had been correct. Dr. Brady says he does not remember how the matter of his calling again was left, but that he received no further orders to come, and did not do so. Late, however, in the evening of Friday the 14th, Dr. Carter, a physician and surgeon, was called in and found Bluhm, as he testifies, at the height of lobar pneumonia in its most severe form, and of this he died the next morning.

There was evidence, expert and otherwise, produced tending to show that Mr. Bluhm was probably suffering from pneumonia for several days before he died, and that, if so suffering, Dr. Webster was properly chargeable with neglect of him or with treating him improperly. Basing his claim upon this, the plaintiff, having been appointed administrator of Bluhm, brought this suit. The declaration which was first filed was drawn in assumpsit, but after setting out the contract of the defendant, alleged that the defendant provided Bluhm with the services of Dr. Webster who treated him in so negligent, improper and unskilful a manner that by and through such carelessness and negligence and want of care and skill of the said physician the said sickness and malady of Bluhm became so increased that he died of it. An addititional count to this declaration was by leave of court filed December 31, 1902, and in this count the corresponding allegation is that the defendant provided Bluhm with the services of a physician, one W. H. Webster, who was not a competent physician, and who treated the said Bluhm in such a negligent, improper and unskilful manner that by and through the carelessness and

negligence and want of due care and skill of the said physician the sickness and malady of Bluhm became so greatly increased and aggravated that he died of *the said sickness and malady* on February 15, 1902.

When the case came to trial a question arose at the out set on the admission of certain evidence, whether this action for the benefit of the widow and next of kin under the " Campbell Act" could be brought in assumpsit. The ruling of the court on this question resulted in the plaintiff asking leave to amend the declaration by changing the form of action from assumpsit to " case *ex delicto.*" Leave being granted, an amended declaration consisting of one count was substituted for the declaration on file. This sounded in tort. It contained, however, the same allegations concerning the treatment of Bluhm by Dr. Webster, and the resulting death, as did the additional count in the original declaration.

To the declaration thus amended the defendant pleaded not only not guilty, but the Statute of Limitations of two years. To this plea a demurrer was filed by the plaintiff instanter, and was sustained by the court, after which the cause proceeded to trial.

It is unnecessary for us to pass on the proposition vigorously insisted on by the appellant, that the trial court erred in sustaining this demurrer, because upon the assumption that it was properly sustained and that the case was properly tried on the merits under the general issue pleaded by the defendant, we think there was no competent and sufficient evidence to sustain any verdict against the defendant. Further, we think it inherent in the nature of the case that there cannot be any such competent and sufficient evidence at any time produced.

The action given by the statute is, as the court correctly instructed the jury, for some wrongful act, neglect or default, which is the direct cause of death. It is a matter of universal experience and a thing of which all courts may take judicial cognizance, that men, young, strong, healthy, given skilful and assiduous medical treatment by eminent

physicians and careful nurses, in spite of all that human means can do, die of pneumonia. It is the disease that kills them, not medical treatment or the want of it. It was the disease, a disease which not infrequently defies all medical skill, which was the direct cause of Bluhm's death. Neglect either by physician or friend, if it existed, a doctor's bad judgment or lack of medical skill, may have lessened his chances of recovery, and it may be conjectured or surmised by survivors that without them he would have lived. But it is impossible that. expert or non-expert could give testimony competent and sufficient to support a verdict which must rest at the very best on the proposition that proper medical attendance would have prevented a death from pneumonia.

This case is not to be likened to one of surgical malpractice or of the administration of poisonous drugs, or of any other of the acts of physicians or surgeons to which the death of a patient might directly be traced.

The medical witnesses who testified for the plaintiff, it should, in justice to them, be noted, did not testify that with ordinary or even extraordinary medical care and skill Bluhm would have recovered. Dr. Stone indeed said, under such circumstances, "the patient should have recovered," but on cross-examination said he couldn't say that the treatment Bluhm received was the cause of his death.

Dr. Poppe could only say that he should think that with the ordinary treatment of physicians of ordinary skill, the majority of cases of pneumonia in Chicago recover, and he believed that if Bluhm had had the right treatment and proper attention 'he *might* have gotten well—"he would have had a chance for his life."

The case should have been taken from the jury on the motion of the defendant at the conclusion of the plaintiff's case. Nothing was added to the strength of the plaintiff's case by the testimony offered for the defendant, and the error was repeated by the denial of the motion to instruct the jury for the defendant at the close of all the evidence.

But if in any case the verdict of a jury should be al-

Red Cross Medical Service Co. v. Green.

lowed to stand, although, at the very best that can be said of it, it must be based on surmise and conjecture, this is not that case. The preponderance of the evidence seems to us to be on the side of the proposition that Dr. Webster, the physician whose negligence is alleged to be the direct cause of death, never saw Mr. Bluhm after he had contracted pneumonia, that his treatment was correct for the ailments the patient was suffering from when he visited him, and that he left the last time with instructions to call him again if he were needed. To find that Mr. Bluhm was suffering from pneumonia on Wednesday, February 12, 1902, we must absolutely ignore the testimony not only of Dr. Webster himself, but that of Dr. Brady, a reputable physician of many years' standing, and substitute for their positive assertions to the contrary, based on examination, a supposition made by one medical expert from a history of the case given him by others and from reports of symptoms made by non-professional women with no special skill in diagnosis, so far as appears. There is no evidence that Dr. Webster was not a competent physician, satisfying in that respect the requirements of the contract. Even if we thought that the case should have gone to the jury, we should be of the opinion that the verdict should be set aside and the judgment reversed with a finding of facts, as one which clearly cannot be sustained.

This view renders superfluous a discussion of the errors alleged as to instructions and rulings on evidence.

We may say, however, that we regard instructions Nos. 1, 8 and 9 accurate, and think that no verdict could have been found for the plaintiff except by disregarding them.

We find the criticism of the appellee as to the abstract in some degree justified, but we have carefully inspected the record to find matter to sustain the verdict in vain.

The judgment is reversed.